752 F.2d 727
 40 Fed.R.Serv.2d 1025
 Sandra GARRITY, etc., et al., Plaintiffs, Appellees,
v.
John SUNUNU, Governor of the State of New Hampshire, et al.,
Defendants, Appellants.
Sandra GARRITY, etc., et al., Plaintiffs, Appellants,
v.
John SUNUNU, Governor of the State of New Hampshire, et al.,
Defendants, Appellees.
 Nos. 83-1946, 83-1947.
 United States Court of Appeals,
First Circuit.
 Argued April 4, 1984.
Decided Dec. 27, 1984.
 
 Bruce E. Mohl, Asst. Atty. Gen., Boston, Mass., with whom Gregory H. Smith, Atty. Gen. and James A. Sweeney, Concord, N.H., were on brief, for John Sununu, Governor of State of N.H., et al.
 Richard A. Cohen, Manchester, N.H., with whom John D. MacIntosh, Concord, N.J., was on brief, for Sandra Garrity, etc., et al.
 Francis X. Bellotti, Atty. Gen., Judith S. Yogman, Asst. Atty. Gen., Boston, Mass., Government Bureau, James E. Tierney, Atty. Gen., Augusta, Me., Miguel Pagan, Deputy Sol. Gen., Gerardo Mariani, Asst. Sol. Gen., San Juan, P.R., and Dennis J. Roberts, II, Atty. Gen., Providence, R.I., on brief, for Com. of Mass., State of Me., Com. of P.R. and State of R.I., amici curiae.
 William R. Yeomans, Atty., Washington, D.C., with whom Wm. Bradford Reynolds, Asst. Atty. Gen., and Jessica Dunsay Silver, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellee U.S.
 John D. MacIntosh, Concord, N.H., with whom Richard A. Cohen, and Alan Linder, Concord, N.H., were on brief, for Sandra Garrity, etc., et al.
 Gerald M. Zelin, Salem, N.H., with whom Soule, Leslie, Bronstein & Zelin, Salem, N.H., was on brief, for appellees Salem School Dist., et al.
 Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and HUNTER,* Senior District Judge.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 These are two appeals concerning an award of attorneys' fees arising out of a largely successful civil rights class action brought by residents of the Laconia State School and Training Center ("Laconia") of New Hampshire. We affirm the judgment of the district court in all except one particular.
 
 I. THE FACTS
 
 2
 We begin by recounting some of the history of the case. Laconia is the only state institution that provides services to the mentally retarded in New Hampshire. Intended originally for children, it was later expanded to accommodate handicapped adults as well. At the time of trial, its population consisted of 564 residents of whom only approximately 80 were under 21 years of age, the rest ranging from ages 21 to 62.
 
 
 3
 The action was filed on April 12, 1978, by six mentally retarded residents of Laconia against the Governor and various New Hampshire officials allegedly responsible for overseeing services provided to the mentally handicapped. The residents were joined by the New Hampshire Association for Retarded Citizens, and the United States also intervened in their support. On February 22, 1980, the court certified the action as a class action, defining the class as follows,
 
 
 4
 (1) Class
 
 
 5
 Developmentally disabled persons who are presently residing at LSS or who in the future may be institutionalized or reinstitutionalized at LSS.
 
 
 6
 (a) Subclass
 
 
 7
 Persons between the ages of three and twenty-one years who are or in the future may be confined at LSS, and whose rights under the Education of the Handicapped Act, 20 U.S.C. Sec. 1401, et seq., may be violated.
 
 
 8
 Garrity v. Gallen, 522 F.Supp. 171, 176 (D.N.H.1981).
 
 
 9
 It was alleged in the complaint that conditions at Laconia, including the institution's inadequate staffing, services and programs, violated the residents' rights under the Developmentally Disabled Assistance and Bill of Rights Act, ("DD Act"), 42 U.S.C. Secs. 6000 et seq.; under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794; under the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. Secs. 1400 et seq.; under the federal Constitution; under the Civil Rights Act, 42 U.S.C. Sec. 1983; and under two New Hampshire statutes, N.H.Rev.Stat.Ann. ch. 171-A and N.H.Rev.Stat.Ann. ch. 186-C.
 
 
 10
 Before the case could go to trial, defendants tendered to plaintiffs an offer of judgment under Fed.R.Civ.P. 68. In the offer, defendants proposed the entry of a court decree affording extensive injunctive relief to plaintiffs along lines pleaded in the complaint. Minimum standards and individual service plans would be guaranteed to the residents of Laconia; state officials would use their best efforts to place all residents for whom Laconia was not the least restrictive environment in less restrictive community settings; and the court was to supervise compliance for a period of years. Plaintiffs refused this offer.
 
 
 11
 The case went to trial, and following a 40-day trial the district court issued a comprehensive opinion. Garrity v. Gallen, 522 F.Supp. 171 (D.N.H.1981). It dismissed the claim under the DD Act, ruling that enforcement of this statute was up to the Secretary of Health and Human Services, not to private litigants. It also rejected plaintiffs' claim that federal and state law, or the federal Constitution itself, entitled them to placement in a less restrictive, community (rather than an institutional) setting. Finally, the court declined to pass on plaintiffs' other constitutional claims, on the ground that it was able to provide the same relief under section 504 of the Rehabilitation Act and N.H.Rev.Stat.Ann. Ch. 171-A. 522 F.Supp. at 236-37.
 
 
 12
 The court went on to hold that defendants had discriminated against the handicapped in violation of section 504 of the Rehabilitation Act by failing to provide many residents with the individual service plans (ISP) called for by state law. It found that defendants had also violated section 504 by denying many services, such as academic and recreational programs, to the more severely retarded residents, based upon generalized assumptions concerning their inability to benefit. The court also held that the procedures by which educational programs were structured at Laconia violated the EAHCA, and N.H.Rev.Stat.Ann. Ch. 186-C, with the result that Laconia was an "educational waste land." The court found that over half the children at Laconia received under 2 1/2 hours per day of educational services in contrast to the normal 5 1/4 hours for the non-handicapped. The court, in addition, found violations of N.H.Rev.Stat.Ann. Ch. 171-A, providing rights for the developmentally impaired. The court's detailed findings of illegality touched upon most aspects of Laconia's operations. The court ordered extensive relief. See Garrity v. Gallen, 522 F.Supp. at 239-44.
 
 
 13
 To implement its decision, the court directed the parties to work out a joint plan. Should they be unable to agree upon a plan, they were to file separate proposals. The parties did not, in fact, agree. They instead presented the court with two different plans which it combined in an implementation order issued on November 16, 1981. The State of New Hampshire has subsequently complied with most of the court's order. Substantial funding and law improvements have been provided by the legislature, and plaintiffs have helped monitor the state's compliance.
 
 
 14
 Following entry of the order of implementation, plaintiffs moved for attorneys' fees pursuant to 42 U.S.C. Sec. 1988 and 29 U.S.C. Sec. 794a. At about the same time, defendants moved under Fed.R.Civ.P. 68 for attorneys' fees in their own favor from the date of their earlier offer of judgment.
 
 
 15
 While these motions were pending, on January 25, 1982, nine school districts of the State of New Hampshire and the New Hampshire School Administrators Association sought to intervene to challenge the provisions of the district court's order which afforded relief to the school-age subclass of plaintiffs under the EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C. The district court dismissed this attempt as untimely and we affirmed that decision in Garrity v. Gallen, 697 F.2d 452 (1st Cir.1983). Plaintiffs subsequently filed a separate motion claiming attorneys' fees and costs against the would-be intervenors for work occasioned by this abortive effort.
 
 
 16
 On August 25, 1983, the district court held that plaintiffs were entitled to receive attorneys' fees against the state defendants in the main action but refused to grant fees against the school districts which had sought to intervene. Defendants' motion for Rule 68 costs, including attorneys' fees, was dismissed on the ground that the language of the rule did not contemplate an award of attorneys' fees, and that defendants' offer had not, in any event, been more favorable than the relief obtained by the plaintiffs.
 
 
 17
 In computing the amount of the award, the court allowed plaintiffs to recover fees from defendants for legal work covering all claims, including certain unsuccessful ones. It also allowed fees to plaintiffs for services related to their monitoring activities. The court awarded a bonus of 20 percent to two of plaintiffs' counsel, for a total award of $220,140.58. Final judgment was entered.[1]
 
 
 18
 Defendants and plaintiffs both appeal from this determination. In No. 83-1946, defendants claim that the district court erred in denying their motion for fees and costs under Rule 68, and they challenge the inclusion of several items in the award made to plaintiffs. Plaintiffs cross-appeal, claiming the district court erred in failing to grant them interest on their fees award. In No. 83-1947 plaintiffs challenge the district court's refusal to grant them fees against the school districts. We discuss these contentions below.
 
 II. DEFENDANTS' FEES CLAIM UNDER RULE 68
 
 19
 Defendants contend that their pretrial offer of judgment under Rule 68[2] was at least as favorable as the judgment plaintiffs finally obtained. For that reason, they say the district court erred in disallowing their motion for post-offer costs including attorneys' fees. In defendants' view, Rule 68 entitles them to recover their own attorneys' fees from plaintiffs, and bars plaintiffs from recovering their fees from defendants. At very least, say defendants, the latter is so--plaintiffs' right, as the prevailing party, to recover fees is cut off by Rule 68. See Bitsouni v. Sheraton Hartford Corp., 52 U.S.L.W. 2354 (D.Conn. Nov. 23, 1983).
 
 
 20
 In rejecting defendants' post-trial motion for costs, including attorneys' fees as a consequence of their earlier Rule 68 offer, the district court determined that the judgment finally obtained was more favorable than the offer. The court also held that attorneys' fees were not "costs" within Fed.R.Civ.P. 68.
 
 
 21
 Whether Congress meant attorneys' fees to be recoverable costs under the rule is a question over which courts have differed but which may soon be resolved by the Supreme Court. Compare Fulps v. City of Springfield, 715 F.2d 1088 (6th Cir.1983) (attorneys' fees included) with Chesny v. Marek, 720 F.2d 474 (7th Cir.1983) (fees not included), cert. granted, --- U.S. ----, 104 S.Ct. 2149, 80 L.Ed.2d 536 (1984), argued, 53 U.S.L.W. 3430 (Dec. 5, 1984) (No. 83-1437) and Pigeaud v. Maclaren, 699 F.2d 401 (7th Cir.1983) (same); compare Delta Air Lines, Inc. v. August, 450 U.S. 346, 376-79, 101 S.Ct. 1146, 1162-64, 67 L.Ed.2d 287 (1981) (Rehnquist, J., with whom Burger, C.J. and Stewart, J., joined dissenting) (fees not included) with id. at 362-63, 101 S.Ct. at 1155-56 (Powell, J., concurring) (fees included when underlying statute on which action is brought includes attorneys' fees as costs).
 
 
 22
 As the question of whether attorneys' fees are costs within Rule 68 is now before the Supreme Court, we shall not presently review the district court's ruling that they are not costs. We focus instead on the district court's determination that the judgment obtained was more favorable than the offer. If that conclusion is valid, it is immaterial whether attorneys' fees are includable within Rule 68 costs, since defendants would not be entitled to costs.
 
 
 23
 Before deciding whether or not to sustain the district court's finding, we may ask whether Rule 68 applies at all in cases like this which involve complex injunctive remedies rather than easily compared dollar damages. The rule is silent and there is little authority on this issue.[3] In the circumstances, we shall assume, without deciding, that Rule 68 is not limited to actions involving liquidated relief. But, adopting that approach, it seems obvious the district court's determination of favorableness must be given a great deal of deference, since in complex cases involving unliquidated relief the relative merits of an early consent settlement and a later decree involve a host of considerations which the trial court is best able to appreciate and compare. Indeed, the decision as to which is the more favorable will ordinarily present a question of fact reviewable under the clearly erroneous standard.[4] See Foggs v. Block, 722 F.2d 933, 938 (1st Cir.1983); Fortin v. Department of Public Welfare, 692 F.2d 790, 794 (1st Cir.1982). The offer and judgment here do not involve two precise and easily comparable sums of money, but rather a choice between a preliminary proposal phrased in vague and open-ended terms and the court's order for the complete restructuring of state-provided services for the plaintiff class. See Note, Rule 68: A New Tool for Litigation, Duke L.J. 889, 902-03 (1978). As the court below was far more familiar with the details of the challenged state services and with the nature and implications both of the proposed remedy and its own, it was in a much better position than ourselves to ascertain the total import of each and to contrast their relative benefits to the plaintiffs.
 
 
 24
 In determining that the judgment was more favorable than the offer, the district court found the latter to be indefinite and ambiguous in some respects. The court was skeptical whether there was much promise in defendants' proposal to develop a plan, to be submitted within 90 days for court approval, that would ensure that the residents of Laconia would receive services in accordance with federal Intermediate Care Facilities for the Mentally Retarded ("ICF/MR") standards under 42 C.F.R. Secs. 442.400-442.516 (1979). The court observed that, unlike the court's later decree, this proposal set no target date for actual compliance with the standards. It noted that under the federal standards, 42 C.F.R. Sec. 442.105 (1983), the existence of a "plan of correction" permitted certification of compliance with the regulations to be obtained, notwithstanding persisting deficiencies. The court concluded that "a plan or offer to achieve compliance is not to be equated with a requirement that the standards be met." As an example, it cited the inability of Laconia to meet the staffing requirements of the federal standards, even though the medicaid-certified buildings were found to be in compliance with ICF/MR standards from 1976 and thereafter.
 
 
 25
 The court found other deficiencies in defendants' offer as well. It noted that the judgment specifically required programming for class members by a certain date, as opposed to an unspecified future date set forth in the offer; the judgment also provided a specific number of hours of programming, as opposed to the offer's vague requirement of "a program"; and the decree contained specific requisites as to the numbers and types of additional professional staff needed, while the offer was silent. The court pointed out that the order provided for the abolition of discrimination within Laconia on the basis of severity of handicap, something which the offer did not do. As other examples of benefits provided by the judgment but not by the offer, the court cited the provisions for the hiring of a medical director and physician qualified in developmental medicine, the closure of certain buildings by specific times, the provisions for service of 100 Laconia residents in community-based programs while still residing at Laconia, the specific regulation of the administration of psychotropic drugs, and the provisions for educational services to handicapped children.
 
 
 26
 Defendants argue, to be sure, that the district court misconstrued their offer with respect to the development of the plan for compliance with the federal ICF/MR standards. They assert that their intention was to commit themselves to the standards, not merely to certification. But the language of the proposal is not absolutely clear. Defendants said they would "develop and submit to the Court for approval within 90 days from the date of this decree a plan to ensure that all developmentally impaired persons who reside at LSS now or in the future will receive services at LSS in accordance with the federal ICF/MR ... standards." No provision was made in the event the court should reject the submitted plan, nor was there any commitment as to the dates by which actual compliance with the standards would be achieved. There is some suggestion in the record that plaintiffs went to court only after Laconia had dragged its feet with respect to earlier promises. Such footdragging would tend to weaken the credibility of the offer, since its value depended on how much defendants could be relied upon to develop and implement an effective plan. For an offer of judgment to have full effect under Rule 68, its terms must be clear. See Scheriff v. Beck, 452 F.Supp. 1254, 1259-60 (D.Colo.1978). The district court was entitled to construe ambiguities in the offer against the offeror lest the offeree be pressured into accepting what later turned out to be an unfavorable offer. Hence, while the issue was by no means open and shut, and we might have affirmed a contrary finding, we do not find clear error in the district court's unfavorable assessment of defendants' proposal.
 
 
 27
 Defendants also argue that the district court erred when, in comparing the offer and the judgment, it included with the latter plans developed by defendants in response to the court's initial rulings, see 522 F.Supp. at 239-44, and embodied in its implementation order. In their view, the comparison should have been restricted to their offer and the court's original order. We find no merit at all in this contention. While it may be true that a substantial part of the plan was contributed by defendants and that some or even much of this was taken from their original offer, it still became a part of the court's judgment. Cf. Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir.1978) (relief obtained through a consent decree considered to determine whether plaintiffs were entitled to attorneys' fees as prevailing parties).
 
 
 28
 Defendants strenuously contend that their offer was more favorable than the judgment because they had agreed to make their "best efforts" to place each Laconia resident for whom it was appropriate in the less restrictive residential facilities in the community. They contend that this was the primary relief sought by plaintiffs all along, and that it was not granted in the court's judgment. However, plaintiffs did in practical fact secure a measure of community placement relief. The plan of implementation provides for the community placement of 235 persons according to a fixed schedule running until 1985. The court was entitled to regard the specificity of this schedule as contrasting favorably with the vaguer if broader relief tendered in defendants' offer, which only committed them to making their "best efforts." Along with the massive other relief it ordered, the court could consider this specific if limited relief as adding up to a remedy which, over all, surpassed the offer. Compare Association for Retarded Citizens of North Dakota v. Olson, 561 F.Supp. 495, 498 (D.N.D.1982), modified on other grounds, 713 F.2d 1384 (8th Cir.1983).
 
 
 29
 Hence, applying the clearly erroneous standard, we are unable to say that the lower court's decision that the relief obtained was not less favorable than the offer must be reversed.
 
 
 30
 III. REASONABLENESS OF AWARD OF ATTORNEYS' FEES
 
 
 31
 Both defendants and plaintiffs contend that the district court erred in the amount of the fees awarded. Defendants challenge the award as too high, and plaintiffs, of course, say that it is too low. We shall deal separately with these contentions.
 
 
 32
 1. Inclusion of Fees for Services under DD Act and "Least Restrictive Setting" Claim
 
 
 33
 Defendants object to the awarding of fees for services on claims the court ultimately rejected--to wit, the claim under the DD Act, and the claim that plaintiffs had a right (guaranteed by federal or state law, or by the federal Constitution) to be placed in the least restrictive, community setting.
 
 
 34
 The district court ruled that while plaintiffs did not prevail on the above matters, they had prevailed on related claims and had secured substantial relief overall. For this reason, it refused to reduce the fees award by the amount of time allocated to the unsuccessful claims. The district court reasoned,
 
 
 35
 Where the lawsuit consists of related claims, a plaintiff winning substantial relief is not to have his attorney's fees reduced simply because the trial court did not adopt each contention raised.
 
 
 36
 The applicable principles are set out in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Where, as here, plaintiffs have won a federal claim for which attorneys' fees are allowed to a prevailing party,[5] the question becomes whether the claims on which they lost in the same suit were unrelated to the successful ones (in which event no fees may be awarded for work on the unsuccessful claims), or whether, instead, the losing claims included "a common core of facts," or were "based on related legal theories," linking them to the successful claim. In the latter event, the award may include compensation for legal work performed on the unsuccessful claims.[6]
 
 
 37
 Application of the Hensley formulation to the present facts is not entirely easy since, as defendants point out, plaintiffs were not vindicated on their "least restrictive setting" theory. Arguably, therefore, their success was only "partial." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941. However, plaintiffs overall were tremendously successful in having the institution and its practices completely overhauled; and the plan of implementation adopted by the court did provide for expanding the community placement program offered by New Hampshire to the handicapped even though it did not recognize the right claimed by plaintiffs.
 
 
 38
 We think the district judge could reasonably find, as he did, that the unsuccessful DD Act claim and the "least restrictive placement" contention were sufficiently related for fee award purposes to the claims on which success was achieved--in particular, to the claim under section 504 of the Rehabilitation Act. The unsuccessful claims shared with the successful claim a "common core of facts"--Laconia's deficient facilities and programs and the proper care and treatment of New Hampshire's handicapped. Moreover, plaintiffs' claim for individual habilitation plans under the DD Act overlapped to some degree the relief ultimately granted by the court relative to individual service plans. Plaintiffs, to be sure, did not persuade the court to give them all the specific relief they requested; however, much of the evidence and arguments relevant to the relief they did not achieve was also relevant to plaintiffs' successful claim under section 504 of the Rehabilitation Act and to the extensive relief obtained. To try to separate out the legal services rendered with respect to these overlapping claims would be an exercise in futility.
 
 
 39
 Where, as here, the district judge gives consideration to the relevant Hensley factors, its judgment is entitled to stand absent an abuse of discretion. Compare King v. Greenblatt, 560 F.2d 1024, 1026 (1st Cir.1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). We find no abuse here with respect to inclusion of fees stemming from work on the related DD Act and "least restrictive setting" claims. Accordingly we sustain the award in this respect.
 
 2. Fees for EAHCA and Related State Claim
 
 40
 Defendants also attack so much of the fees award as compensated plaintiffs' attorneys for services relative to plaintiffs' claims under the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. Secs. 1400 et seq.
 
 
 41
 By the time the award was made, this court had decided Smith v. Cumberland School Committee, 703 F.2d 4 (1st Cir.1983), holding that because there was no provision for recovery for attorneys' fees in the EAHCA, there could be no fees award in a successful EAHCA suit on behalf of a handicapped child seeking an appropriate education. This was so even though the complaint referred not only to the EAHCA but also to 42 U.S.C. Sec. 1983 and section 504 of the Rehabilitation Act, both of which statutes have fees provisions. Smith v. Cumberland has since been affirmed by the Supreme Court in Smith v. Robinson, --- U.S. ----, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Our decision, and that of the Supreme Court, stem of course from the Court's decision in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), holding that each party to a lawsuit must ordinarily bear its own attorneys' fees unless Congress expressly provides otherwise.
 
 
 42
 In Smith v. Robinson, the Court rejected the argument that fees were available in such cases under section 1988, observing that the EAHCA was "the exclusive avenue through which a [handicapped] plaintiff may assert an equal protection claim to a publicly financed special education." --- U.S. at ----, 104 S.Ct. at 3468. And it similarly ruled out reliance upon the fees provision of the Rehabilitation Act on the ground the Rehabilitation Act does "not require affirmative action on behalf of handicapped persons, but only the absence of discrimination against those persons." --- U.S. at ----, 104 S.Ct. at 3473. The Court was aware that regulations had been adopted under the Rehabilitation Act conforming closely to certain ones under the EAHCA, see --- U.S. at ----, nn. 20, 21, 104 S.Ct. at 3472-73, nn. 20, 21, but noted that there was "uncertainty regarding the reach of the Rehabilitation Act" to require a free appropriate public education. Moreover,
 
 
 43
 [e]ven assuming that the reach of Sec. 504 is coextensive with that of EHA [EAHCA], there is no doubt that the remedies, rights and procedures Congress set out in the EHA [EAHCA] are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA [EAHCA] by resort to the general antidiscrimination provision of Sec. 504.
 
 
 44
 -- U.S. at ----, 104 S.Ct. at 3473. The Court went on to say that while Congress did not explain the absence of a provision for a damages remedy and attorneys' fees in the EAHCA, several statutory and legislative history references indicate that Congress did not want to impose additional financial burdens upon the local school districts and state educational agencies. Id.
 
 
 45
 Given Smith v. Robinson, we see no basis for upholding the fees award with respect to legal work on the EAHCA claim. The EAHCA claim here was based exclusively on that statute plus N.H.Rev.Stat.Ann. Ch. 186-C (Supp.1983), which the district court held to be the "state counterpart" to the EAHCA. 522 F.Supp. at 1221. It was pursued only by a minority of the plaintiffs, a subclass composed of present and future residents at Laconia between 3 and 21 years of age. The problems these younger residents sought to correct, and for which the court gave relief, stemmed from the failure of local educational districts to meet their duties under the EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C to provide funding and close supervision with respect to the IEP's of local residents who left home to become inmates at Laconia. What the court sought to do (and commendably seems to have accomplished) was to see that the right of these young residents under EAHCA to "a free appropriate public education" did not "fall between the cracks" in a state bureaucratic and financial system geared to local school districts.
 
 
 46
 Whether a claim of this character was technically authorized under the EAHCA is a moot question on which we do not comment: no appeal was taken as to this issue.[7] It is clear, in any event, that relief was sought and granted exclusively under the Act and its state counterpart, rather than under any other federal statute. This claim was not the exceptional case mentioned at the end of Smith v. Robinson "where Sec. 504 [of the Rehabilitation Act] guarantees substantive rights greater than those available under the [EAHCA]." --- U.S. at ----, 104 S.Ct. at 3474.
 
 
 47
 The district court sought to distinguish our holding in Robinson 's forerunner, Smith v. Cumberland, on the ground that the educational relief it was granting to the plaintiff subclass was under the New Hampshire Special Education Statute, N.H.Rev.Stat.Ann. Ch. 186-C, not the EAHCA. But we do not see how this allows the granting of attorneys' fees. There is no fees provision in N.H.Rev.Stat.Ann. Ch. 186-C itself; if fees are authorized, it has to be through the medium of some fee entitling federal statute.
 
 
 48
 Of course, if a successful pendent state claim shares a common nucleus of operative facts with a fee entitling federal statute, an award of fees for work on the pendent claim might be appropriate.[8] Milwe v. Cavuoto, 653 F.2d 80, 84 (2d Cir.1981). Compare Lund v. Affleck, 587 F.2d 75, 77 (1st Cir.1978) (pendent federal statutory claim). But the pendent state claim here, like the EAHCA claim itself, is much narrower than the claims of the larger plaintiff class. The majority of plaintiffs, who are adults, could not have obtained relief under N.H.Rev.Stat.Ann. Ch. 186-C, which relates only to handicapped children between ages 3 and 21. And the subclass, suing specifically for the educational rights of persons aged 3-21 is barred from recovery under the fees provisions of section 504 of the Rehabilitation Act and section 1988 for the reasons set out in Smith v. Robinson. Suing under the state counterpart to the EAHCA, they cannot have rights to fees superior to those they would have under the EAHCA itself. The same policies the Supreme Court set out in Smith v. Robinson forbidding recovery of fees on an EAHCA claim under section 504 of the Rehabilitation Act and 42 U.S.C. Sec. 1988 apply a fortiori to the state pendent claim.
 
 
 49
 We accordingly must reverse the award of fees for services relative to the EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C claims of the plaintiff subclass. We remand to the district court for determination of the amount allocable to these claims, and for entry of a new award which excludes that amount.
 
 3. Fees under State Pendent Claims
 
 50
 Defendants also claim that the award of attorneys' fees for work spent on the state pendent claims was erroneous in light of the Supreme Court's recent decision in Pennhurst State School & Hospital v. Halderman, --- U.S. ----, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In Pennhurst, the Supreme Court held that the eleventh amendment bars federal courts from issuing injunctive relief against state officials based on pendent state law claims. Although they have not appealed from the district court's judgment in plaintiffs' favor on the pendent state claims, defendants urge us now to disallow all fees based on services relative to those claims on the premise that they were not maintainable in light of Pennhurst. Citing Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 1362-63, 39 L.Ed.2d 662 (1974), and Bellotti v. Baird, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976), for the proposition that the eleventh amendment is jurisdictional, they seek to raise the issue, for the first time ever, in this fees appeal.
 
 
 51
 As we have already rejected the fees award under N.H.Rev.Stat.Ann. Ch. 186-C on other grounds, defendants' argument would affect, if anything, only the award of attorneys' fees for services regarding N.H.Rev.Stat.Ann. Ch. 171-A. We hold the contention to be without merit.[9]
 
 
 52
 The most obvious reason for rejecting this argument is that defendants are asking us to open up an issue--the validity of the district court's granting of relief under N.H.Rev.Stat.Ann. Ch. 171-A--on which they have not only not objected or appealed but in which they have affirmatively acquiesced. Defendants state in their brief, with understandable pride, that they have filed 13 reports with the court since November 1981 detailing their implementation of the court's decree. The most recent such report, they write, was filed on January 16, 1984. Defendants go on to say,
 
 
 53
 Almost without exception the defendants have fully implemented the provisions of the district court's orders, in accordance with the terms of their proposed plan submitted and then modified by the district court.
 
 
 54
 The New Hampshire legislature, as well as the executive branch, have meanwhile assisted in implementing the court's plan, by appropriations of money and various other measures.
 
 
 55
 In Pennhurst, the Supreme Court recognized that the sovereign immunity protected by the eleventh amendment may be waived and that "a State may consent to a suit against it in the federal court," so long as this consent is "unequivocally expressed." Pennhurst, --- U.S. at ----, 104 S.Ct. at 907. While failure to object or appeal may alone be insufficient indicia of consent, we think that the totality of the defendants' and New Hampshire's conduct here reflects "unequivocal consent" to the jurisdiction of the federal court in this matter. The state has affirmatively complied with most of the court's implementation order--never once objecting on grounds of the eleventh amendment or sovereign immunity. We think it has effectively consented to the court's jurisdiction in respect to these nearly completed events.
 
 
 56
 Waiver of a state's immunity may be inferred from the state's conduct. See Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883); Gallagher v. Continental Insurance Co., 502 F.2d 827, 830 (10th Cir.1974). See also 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction Sec. 3524, at 160 (1984). New Hampshire's conduct here indicates consent to this suit and an acceptance of the federal court's jurisdiction. See Vecchione v. Wohlgemuth, 558 F.2d 150, 158-59 (3d Cir.1977) (state's failure to appeal so that decree becomes final constitutes waiver of eleventh amendment); New York State Association for Retarded Children v. Carey, 596 F.2d 27, 39 (2d Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979) (state's participation in consent decree requiring state to provide additional funding constitutes waiver of immunity); Jordan v. Fusari, 496 F.2d 646, 651 (2d Cir.1974) (eleventh amendment waived as to principal claim by state's participation in consent decree does not bar claim for fees alone). It is too late for these defendants or for New Hampshire itself to collaterally attack[10] the court's judgment solely for the purpose of avoiding payment of the fees award.
 
 4. Monitoring Fees
 
 57
 Defendants challenge the fees award for time spent by plaintiffs' attorneys in post-judgment monitoring of the court's order. They claim this work was not related to any matter on which plaintiffs "may be said to have prevailed." In their view, compensable post-judgment monitoring should be restricted to efforts necessary to secure compliance from a resistant party, such as time spent in bringing motions for contempt or other similar proceedings.
 
 
 58
 In its order, the district court found that the services in question "were rendered when disputes arose between counsel for the parties with reference to certain budgetary, environmental, and staffing matters detailed in this Court's prior Order of Implementation," and that "they are reasonable and necessary and are to be awarded."
 
 
 59
 Other circuit courts have held that post-judgment services necessary for reasonable monitoring of a consent decree are compensable under 42 U.S.C. Sec. 1988. Northcross v. Board of Education, 611 F.2d 624, 637 (6th Cir.1978), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); Bond v. Stanton, 630 F.2d 1231, 1233 (7th Cir.1980); Miller v. Carson, 628 F.2d 346, 348 (5th Cir.1980). Cf. Burke v. Guiney, 700 F.2d 767, 771 (1st Cir.1983). It was to defendants' credit that a constructive atmosphere prevailed, but we do not think that extreme tension and animosity are preconditions to a fees award of this sort. The court was entitled to believe that relief would occur more speedily and reliably if the monitoring referred to occurred, and that this was a necessary aspect of plaintiffs' "prevailing" in the case. We find no abuse of discretion in that part of the award.
 
 5. Twenty Percent Bonus
 
 60
 Defendants argue that the district court erred in awarding a 20 percent bonus to two of plaintiffs' lawyers. Plaintiffs requested a 50 percent increase in the lodestar of Richard Cohen and John MacIntosh, their principal attorneys, whose average hourly rates, allowed by the court, were $60.26 and $45.80 respectively. In its order, the district court said that upward adjustments of statutorily awarded legal fees were available only on rare occasions, generally in those cases "where the legal representation is unusually good and exceptional results are obtained." It found that the representation furnished by the two attorneys was unusually good and the results obtained were "exceptional." In support of these findings, the court said,
 
 
 61
 [p]rior to the litigation and its resulting orders, much discussion and little funding had been provided for the unfortunate mentally retarded citizens of New Hampshire. The litigation has resulted in substantive results, including substantially increased legislative funding, improved facilities at LSS, and ongoing efforts to insure that the future of the members of the plaintiff class is much brighter than it was before counsel were retained to represent their interests.
 
 
 62
 The court went on to hold that the two attorneys were entitled to an upward adjustment, but limited this to 20 percent, finding the requested 50 percent to be excessive.
 
 
 63
 Defendants contend that this bonus constituted a windfall, since it was added to the amount already determined to be a "reasonable compensation." Blum v. Stenson, --- U.S. ----, ----, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). See Oliver v. Kalamazoo Board of Education, 576 F.2d 714, 715 (6th Cir.1978); Northcross v. Board of Education, 611 F.2d 624, 633 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).
 
 
 64
 While upward adjustments to the lodestar have been recognized in the past both by this court and the Supreme Court, the latter has recently ruled, in an opinion issued after the fees award under review, that the reasonable fee contemplated by section 1988[11] is "presumptively" the product of reasonable hours times a reasonable rate. Blum v. Stenson, --- U.S. at ----, 104 S.Ct. at 1548. Upward adjustments over and above that amount are to be few and far between. Such matters as the novelty and complexity of the issues, and the experience and special skill of the attorney, should normally be reflected either in a greater number of billable hours or in a higher hourly rate. Id. An upward adjustment for quality of representation is justified,
 
 
 65
 only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charges and that the success was exceptional.
 
 
 66
 Id.
 
 
 67
 In Blum v. Stenson the rates were $95 to $105 an hour, the bonus was 50 percent, and none of the attorneys had had more than 1 1/2 years of experience as practicing lawyers. The Supreme Court termed the upward adjustment "a clear example of double counting." Id.
 
 
 68
 On the facts of this case, and taking into account that the lower court lacked the guidance of Blum at the time it ruled, we sustain the challenged upward adjustments even though we recognize that under Blum certain of the qualities sought to be recognized by the bonuses might better have been recognized by means of more adequate hourly rates.
 
 
 69
 First, and most important, there was no "double counting" here, since the district court clearly regarded both Cohen's and MacIntosh's average hourly rates, of $60.26 and $45.80, as below the going market rate:[12] it found that the hourly rates submitted by Cohen, who had had eleven years' experience in the practice of law at the time of trial, were "below the average for private practitioners of his age and level of experience." As to MacIntosh, it found his submitted rates "more than reasonable." (MacIntosh had practiced for four years and had extensive civil rights litigating experience as did Cohen.) Adding the 20 percent adjustment to these rates makes them $72.31 and $54.96--substantial but still within the range of the rates indicated in plaintiffs' supporting affidavits. See note 12, supra.
 
 
 70
 Second, the district court supportably found that the results were "exceptional." An "exceptional" outcome is a factor noted in Blum v. Stenson as, in rare circumstances, permitting an upward adjustment.
 
 
 71
 Finally, the fact that the record shows plainly that the district court acted with painstaking care and restraint in calculating fees makes us especially reluctant to dispute its award. Plaintiffs' counsel likewise submitted carefully compiled, detailed accounts. We, therefore, affirm the district court's fee awards to these two attorneys.
 
 6. Interest on Award
 
 72
 In their cross-appeal, plaintiffs seek to obtain retroactive interest in their fees award from November 25, 1981, the date that final judgment was originally entered in this case. In the alternative, they ask for an increase in their lodestar to reflect the delay in payment. The district court vacated its final judgment in reliance on our opinion in White v. New Hampshire Division of Employment Security, 629 F.2d 697 (1st Cir.1980), which was later reversed by the Supreme Court, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). After the Supreme Court's decision, plaintiffs twice moved for reinstatement of the final judgment. But, in light of defendants' objections on both occasions, the district court did not enter final judgment until August 25, 1983 when it ruled on the fees claims. In plaintiffs' view, the delay thus occasioned entitles them to additional compensation, either in the form of a "multiplier" or an enhanced lodestar.
 
 
 73
 We are not inclined to second guess the lower court on this matter. In determining the lodestar and awarding the 20 percent upward adjustment, the district court recognized that it was entitled to take account of "possible delays in payment" and, for all we know, did so. As an appellate court, we are disinclined to deal with the issue de novo.
 
 
 74
 In conclusion we sustain the fees awards in toto except we remand for subtraction of that portion of the fees awards as derives solely from services performed on the subclass's claims under EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C.
 
 
 75
 IV. PLAINTIFFS' FEES CLAIM AGAINST THE SCHOOL DISTRICTS
 
 
 76
 In a separate appeal, plaintiffs contend the district court should have allowed their motion for attorneys' fees against the local school districts. Instead, the court rejected the motion. These school districts had unsuccessfully sought to intervene in order to resist parts of the court's order delineating educational responsibilities they must take with respect to institutionalized minor plaintiffs whose families resided in their districts. Garrity v. Gallen, 697 F.2d 452 (1st Cir.1983). Intervention was denied because of untimeliness. Id.
 
 
 77
 The Supreme Court's decision in Smith v. Robinson, --- U.S. ----, 104 S.Ct. 3457, 82 L.Ed.2d 746,[13] plainly renders plaintiffs' appeal futile. Whatever else might be said for or against the district court's reasons for denial of fees against the would-be intervenors, the short answer now is that no fees are allowable since plaintiffs' only claims against the local school districts, and vice versa, were based upon the EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C. For reasons already discussed, fees are not allowable for causes of action under those statutes. We see no other federal statutory basis upon which plaintiffs may be compensated.[14]
 
 
 78
 The judgment of the district court is affirmed, except so much thereof which awards fees for services relative to claims under the EAHCA and N.H.Rev.Stat.Ann. Ch. 186-C, which part is vacated. The case is remanded for recomputation of the fees awards omitting that portion.
 
 
 79
 So ordered.
 
 
 
 *
 Of the Western District of Missouri, sitting by designation
 
 
 [1]
 Final judgment had been initially entered on November 25, 1981, after the district court's order of implementation. However, at the plaintiffs' request, the district court vacated its judgment to consider the fees claims, in light of our decision in White v. New Hampshire Division of Employment Security, 629 F.2d 697 (1st Cir.1980), holding that attorneys' fees had to be determined before final judgment. Our decision was later reversed by the Supreme Court, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Thereafter, plaintiffs twice moved that final judgment be reinstated, but the district court only did so after its attorneys' fees order
 
 
 [2]
 This rule provides,
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.
 
 
 [3]
 Cf. Gay v. Waiters & Dairy Lunchmen's Union Local No. 30, 86 F.R.D. 500 (N.D.Cal.1980). See also Note, Rule 68: A New Tool for Litigation, Duke L.J. 889, 903-04 (1977); Note, Application of an Offer of Judgement in a Title VII Suit, 2 Pace L.Rev. 331 (1982)
 
 
 [4]
 Defendants argue that because both the offer and the judgment are contained in documents which are matters of record, we are in the same position as the district court to decide their relative benefits, citing Brewster v. Dukakis, 687 F.2d 495 (1st Cir.1982) and Brown v. Neeb, 644 F.2d 551 (6th Cir.1981). These cases are readily distinguishable, however. This court does not deviate from the "clearly erroneous" standard simply because there is a documentary record. See Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 377 (1st Cir.1980). Here inferences concerning defendants' likely motives and sincerity at different stages could well be relevant. The present record is best evaluated by someone like the trial judge who has spent days and months listening to witnesses and sifting the evidence. As the Sixth Circuit said in Brown v. Neeb, "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." 644 F.2d at 558 n. 12
 
 
 [5]
 The core relief obtained by the broad plaintiff class here was based on N.H.Rev.Stat.Ann. Ch. 171-A and on section 504 of the Rehabilitation Act. Section 505 of the Act, 29 U.S.C. Sec. 794a(b), allows the court to award a reasonable attorneys' fee to the prevailing party. This provision is similar to 42 U.S.C. Sec. 1988, the subject of the Supreme Court's analysis in Hensley. See infra note 11
 
 
 [6]
 In Hensley, the Court said,
 It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See Davis v. County of Los Angeles, 8 E.P.D. p 9444, at 5049 (CD Cal.1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
 If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rates may be an excessive amount.
 461 U.S. at 435-36, 103 S.Ct. at 1940-41 (footnote omitted).
 
 
 [7]
 The EAHCA allows any party aggrieved by a state agency's findings and decision relative to rights conferred by the Act to bring a civil action, 20 U.S.C. Sec. 1415(e)(1), but as the district court recognized, it is not entirely clear to what extent a general enforcement action of the present character could be maintained under the Act without prior administrative proceedings. The EAHCA also provides for the Commissioner of Education to cut off federal funds in the event state agencies fail to carry out their duties under the Act. A state dissatisfied with a funding cutoff may appeal to the federal courts of appeals. 20 U.S.C. Sec. 1416
 
 
 [8]
 Were this case to be tried today, the status of the pendent state claims would be considerably clouded by the Supreme Court's decision in Pennhurst State School & Hospital v. Halderman, --- U.S. ----, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, as we discuss below, that problem was never raised and cannot now be an issue in this narrow appeal limited to fees. We add that there is no eleventh amendment bar here specifically to the collection of fees for legal work on the pendent state claim. As in Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the present plaintiffs brought constitutional claims which the district court did not reach because it was able to decide purely on statutory grounds. 522 F.Supp. at 236-37. The Supreme Court held in Gagne that the eleventh amendment did not bar recovery of attorneys' fees for services in regard to a wholly statutory, non-civil rights claim so long as that claim was pendent to a substantial if unresolved constitutional claim. 448 U.S. at 132, 100 S.Ct. at 2576. It left open "whether a federal court could award attorney's fees against a state based [solely] on a statutory, non-civil-rights claim." 448 U.S. at 132, 135, 100 S.Ct. at 2576, 2577. Defendants do not now contend that plaintiffs' undecided constitutional claims were insubstantial
 
 
 [9]
 As we pointed out in note 8, supra, the eleventh amendment does not otherwise bar a fees award relative to a proper state pendent claim in this proceeding
 
 
 [10]
 For all practical purposes, the lower court's judgment on the merits is final, the present appeal being directed solely to attorneys' fees. Notwithstanding the Supreme Court's decision in United States v. U.S. Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), it is unlikely today that a court's final judgment will ordinarily be open to collateral attack on eleventh amendment grounds. See generally C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction Sec. 4429 (1981)
 
 
 [11]
 Because the fees provision in section 505 of the Rehabilitation Act is similarly worded to 42 U.S.C. Sec. 1988, the Court's holding in Blum v. Stenson is controlling as to the former as well as the latter. See Smith v. Robinson, --- U.S. at ----, 104 S.Ct. at 3466 (section 505 incorporates legislative history of section 1988). See also Jones v. Illinois Department of Rehabilitation Services, 689 F.2d 724, 730 n. 8 (7th Cir.1982); Disabled In Action v. Mayor of Baltimore, 685 F.2d 881, 885 n. 4 (4th Cir.1982)
 
 
 [12]
 Affidavits of three New Hampshire practitioners were filed by plaintiffs in support of their fees claim. Attorney Robert Morrill, who had two years' less experience than Cohen, testified that his normal rates were $75 per hour. He felt that plaintiffs' fees calculations were "more than reasonable and, in fact, very conservative estimates." Attorney Russell F. Hilliard with experience comparable to MacIntosh's, testified that his rates varied from $50 to $60 per hour, and that the rates requested by plaintiffs were "extremely fair and reasonable." Attorney Paul Semple, with more experience than either Cohen or MacIntosh, testified that he charged $70 per hour. He added that plaintiffs' proposed rates "seem fair and are probably below the normal billing rates for persons with commensurate experience in private practice in New Hampshire."
 As the hourly rates were below the value of the services rendered, plaintiffs can be said to have met the burden stated in Blum v. Stenson of offering "specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rate charges." --- U.S. at ----, 104 S.Ct. at 1549.
 
 
 [13]
 Smith v. Robinson was decided by the Court long after the district court's decision and some time after argument of the appeal in this court
 
 
 [14]
 Like the parties and the district court we limit our discussion to attorneys' fees and related costs. We do not understand that the court's power to grant or deny Fed.R.Civ.P. 54(d) costs is being raised in this appeal