SIERRA CLUB, Plaintiff,

v.

John L. MARSH, Jr., et al., Defendants.

SIERRA CLUB, et al., Plaintiffs,

v.

Elizabeth H. DOLE, et al., Defendants.

Civ. Nos. 84–0366 B, 84–0388 B.

United States District Court,
D. Maine.

July 16, 1986.

Peter L. Koff, Edward F. Lawson, Weston, Patrick, Willard & Redding, Boston, Mass., Richard A. Spencer, Drummond, Woodsum, Plimpton & MacMahon, Portland, Me., for defendants. ⊤S

Ralph A. Child, Asst. U.S. Atty., Chief, Civil Div., Boston, Mass., F. Mark Terison, Asst. U.S. Atty., Portland, Me., for defendants in 84–0366 B.

Cabanne Howard, Asst. Atty. Gen., Augusta, Me., for intervenor St. of Maine.

Sylvia Sepulveda-Hambor, Atty., Dept. of Justice, Gen. Litigation Section, Land & Natural Resources Div., Washington, D.C., for federal defendants in 84–0366 B, 84–0388 B.

Cabanne Howard, Asst. Atty. Gen., Augusta, Me., for Maine Dept. of Transp.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., for federal defendants in 84–0388 B.

### MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Senior District Judge.

Presently before the Court are motions of plaintiff Sierra Club for an award of attorneys' fees and expenses in these two related actions, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The motions are supported by affidavits and detailed timesheets. Defendants object to plaintiff's entitlement to any award in Civil No. 84–0366 B, and to the amounts requested in both actions. A hearing has been held, and counsel have submitted written and oral arguments. To the extent hereinafter set forth, plaintiff's requests for attorneys' fees and expenses are granted.

### I.

### *Background of the Cases*

*No. 84–0366 B (Sierra I).* In No. 84–0366 B (*Sierra I*), plaintiff charged that actions by the United States Army Corps of

Engineers and the Federal Highway Administration (collectively "the agencies") in issuing a dredge and fill permit and providing federal funds for the construction of a $25 million port facility, causeway an access road at Sears Island, Maine (the Project) violated the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq. (Count I); the Clean Water Act, 33 U.S.C. § 1251 et seq. (Count II); Executive Order 11990, 42 Fed.Reg. 26961 (May 24, 1977) (Count III); the Fish and Wildlife Coordination Act, 16 U.S.C. § 661 et seq. (Count IV); and the Federal-Aid Highway Act, 23 U.S.C. § 101 et seq. (Count V). Named as defendants were the Secretary of the Army, the New England Division Engineer of the Corps, the Secretary of Transportation and the Division Administrator of FHWA (collectively "the federal defendants"). The State of Maine through the Maine Department of Transportation (MeDOT) subsequently intervened as a defendant.

After a detailed review of the administrative record, this Court found firm support for the agencies' findings, based on Environmental Assessments (EA's), that the Project would have no significant impact on the quality of the human environment (FONSIs) and their decisions not to prepare an Environment Impact Statement (EIS). Accordingly, this Court concluded that the decision to proceed without the preparation of an EIS was not a violation of NEPA. The Court also found no violation by defendants of the Clean Water Act, Executive Order 11990, the Fish and Wildlife Coordination Act, or the Federal-Aid Highway Act. The Sierra Club appealed.

On August 9, 1985, the First Circuit Court of Appeals vacated this Court's decision. *Sierra Club v. Marsh,* 769 F.2d 868 (1st Cir.1985) (*Sierra Club I*). The Court of Appeals found that the agencies had failed to consider the secondary impacts of the Project, *i.e.,* the significant effect on the environment of further industrial development on Sears Island that would result from the construction of the port and causeway. *Id.* at 877–82. The court concluded that the FONSIs were unsupport-

able, and that the decision to proceed without the preparation of an EIS was a violation of NEPA. *Id.* at 881–82. The Court of Appeals did not address the claims made by plaintiff in Counts II, III, IV and V of the complaint.

*No. 84–0388 B (Sierra II).* In No. 84–0388 B (*Sierra II*), plaintiff charged that the Coast Guard acted arbitrarily and capriciously in issuing a "bridge" permit under the General Bridge Act of 1946, 33 U.S.C. § 525(b), for the construction of the causeway portion of the Project (Count I), and violated NEPA by failing to prepare an EIS before issuing the permit (Count II). Named as defendants were the Secretary of Transportation and the Commandant of the Coast Guard (collectively "the federal defendants"), and MeDOT. Following review of the administrative record, this Court held that the Coast Guard acted arbitrarily and capriciously in issuing a "bridge" permit for the construction of the causeway. The Court revoked the permit and enjoined the issuance of a further permit under the General Bridge Act. The Court did not address the NEPA issues also raised by plaintiff.

The federal defendants did not appeal this Court's ruling, but MeDOT did. On December 23, 1985, the Court of Appeals affirmed the revocation of the "bridge" permit by this Court. *Sierra Club v. Secretary of Transportation,* 779 F.2d 776 (1st Cir.1985) (*Sierra Club II*).

Following the Court of Appeals decision in *Sierra II,* on January 21, 1986, plaintiff filed the present motions for an award of attorneys' fees and expenses under the EAJA. In *Sierra I,* plaintiff seeks $49,628.87 in attorneys' fees and $1,861.79 in expenses. In *Sierra II,* plaintiff requests $38,054.22 in attorneys' fees and $566.27 in expenses.

The motions present two central issues: first, is Sierra Club entitled to an award of attorneys' fees and expenses under the EAJA in *Sierra I* (defendants have conceded plaintiff's entitlement to such an award in *Sierra II*); and, second, if war-

ranted, what is the amount of attorneys' fees and expenses to be awarded.

## II.

### Entitlement to Attorneys' Fees and Expenses in Sierra I

The EAJA provides for an award of attorneys' fees and expenses to a prevailing party other than the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[1] Defendants concede that Sierra Club is the "prevailing party" on the NEPA claim in Sierra I, within the meaning of Section 2412(d)(1)(A).[2] Nor do they dispute that Sierra Club meets the definition of a "party" eligible to make an EAJA claim, under Section 2412(d)(2)(B). Defendants strenuously argue, however, that the position of the government both in the litigation and in the underlying agency actions was substantially justified, and therefore plaintiff is not entitled to an award of attorneys' fees and expenses. The Court must disagree.

In this Circuit, the controlling legal principles have been recently established. The test for determining whether the government's position was "substantially justified" is one of reasonableness: "did the government have a reasonable basis for the facts alleged; did it have a reasonable basis in law for the theories advanced; and did the facts support its theory." *United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir. 1985).[3] The government has the burden of proving that its position was substantially justified by a preponderance of the evidence, and the fact that the government lost does not give rise to a presumption that its position was not substantially justified. *Id.* The test of reasonableness "represents a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Id.*

The opinion of the Court of Appeals in this case precludes a finding by this Court that the government's position, either in the litigation or in the agency actions which gave rise to the litigation, was substantially justified. The Court of Appeals made its own independent review of the administrative record for the purpose of deciding whether the agencies' FONSIs and decisions not to prepare an EIS were lawful. 769 F.2d at 872. In undertaking that review, the court stated that "the court in a case like this must essentially look to see if the agency decision, in the context of the record, is too *'unreasonable'* (given its

---

1. Subsection (d) of section 2412 was repealed on October 1, 1984. It was reenacted with amendments on August 5, 1985, when the Act was extended and amended. Pub.L. 99–80. The most significant amendment was the addition of the following sentence to section 2412(d)(1)(B):

   Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

2. The related question of whether a party may receive a fee award under the EAJA for work performed on those issues on which it did not prevail at trial will be discussed below in the determination of the amount of fees to be awarded. As there noted, Sierra Club is seeking an award only for services allocated to the NEPA claim.

3. Plaintiff correctly points out that the legislative history of the 1985 amendments to the EAJA discloses the intent of Congress that "substantial justification" requires more than a showing of mere reasonableness:

   Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. *Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.*

   H.R.Rep. No. 120, Part I, 99th Cong. 1st Sess., *reprinted in* 1985 U.S.Code Cong. & Ad.News, pamphlet No. 6 at 132, 138 (emphasis added) (footnote omitted).

   The Court need not address this position because even under the less burdensome test of reasonableness enunciated in *Yoffe,* the government has failed to show that its position was substantially justified.

statutory and factual context) for the law to permit it to stand." *Id.* at 871 (emphasis supplied). In its consideration of the lawfulness of the agencies' findings that the Project will have no significant impact on the environment, the court again defined the legal issue to be "whether the record reveals that conclusion to be *unreasonable,* to the point where the decision not to prepare an EIS either violates NEPA or (what here comes to the same thing) is 'arbitrary, capricious, an abuse of discretion.'" *Id.* at 876 (emphasis supplied) (citation omitted). After a detailed review of the administrative record, the court concluded that "given the likely secondary effects of the Sears Island project and the other effects previously described, the record in this case cannot support a FONSI and therefore an EIS must be prepared." *Id.* at 881–82. This conclusion was based on the court's finding that the agencies could not "reasonably conclude" that the Project, including its secondary effects, would have no significant impact on the environment. *Id.* at 880. Accordingly, this Court cannot say that the government's position was reasonable and therefore substantially justified.

Plaintiff is entitled, as the prevailing party, to an award of attorneys' fees and expenses under the EAJA in *Sierra I.*

## III.

### Amount of Attorneys' Fees

In determining the amount of a reasonable award of attorneys' fees, the Court of Appeals has adopted the "lodestar" approach. *Futado v. Bishop,* 635 F.2d 915, 919–21 (1st Cir.), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). *See also Codex Corporation v. Miligo Electronic Corporation,* 541 F.Supp. 1198, 1201 (D.Mass.1982) ("lodestar" approach applicable to all cases in which attorneys' fees are awarded). The lodestar approach consists of determining "'the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Furtado v. Bishop,* 635 F.2d at 920.

Calculation of the lodestar figure requires the Court to separate work done according to the level of expertise of the attorneys involved and the skill required by the case; to eliminate duplicative and unproductive time; and to assign hourly rates "for the kinds of work done by those at different levels of expertise." *Id.* Once a lodestar figure is determined, the Court then must consider whether an adjustment is necessary to reflect such other factors as

the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (*i.e.,* an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc.

*Id.; Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950–51 (1st Cir.1984).

Applying these guidelines, the Court now turns to the fee applications in these two cases.

### A. *Sierra I*

*Number of Hours.* The affidavits and timesheets attached to plaintiff's fee application in *Sierra I* detail the number of hours expended by the three attorneys and two law clerks who worked on the case. The application includes only hours spent on the NEPA issues presented in Count I of the complaint and excludes time spent on unsuccessful claims such as those asserted in Counts II, III, IV and V.

Plaintiff seeks compensation for the following hours expended by counsel on the NEPA claim:

Work on the merits:

| Attorney | Hours |
| --- | --- |
| Edward F. Lawson | 252.8 |
| Peter L. Koff | 74.0 |
| Richard A. Spencer | 9.8 |

| Law Clerks | Hours |
| --- | --- |
| Wendy Levine | 30.2 |
| Joyce Richard | 27.5 |

Work on the fee application:

| Attorney | Hours |
|---|---|
| Edward F. Lawson | 95.8 |
| Peter L. Koff | 7.2 |
| Richard A. Spencer | 1.0 |

| Law Clerk | |
|---|---|
| Rebecca Ritchie | 19.1 |

The Court disallows as excessive 8 hours of the 11 hours Mr. Lawson and Mr. Koff each requested for time spent on oral argument before this Court on November 19, 1984. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952–55. An examination of the affidavits and timesheets, and the Court's familiarity with counsel's work on the case, satisfies the Court that the remaining hours for which plaintiff seeks compensation were reasonably expended by its attorneys in their successful prosecution of the NEPA claim and in pursuit of an award of attorneys' fees and expenses that has been vigorously contested by defendants.

Defendants contend that the hours expended by plaintiff's counsel on the NEPA claim should be reduced by the amount of time spent on aspects of that claim on which it is asserted plaintiff did not ultimately prevail. The Court rejects this contention. It is true that plaintiff cited a number of deficiencies in the EA's prepared by the agencies, and the Court of Appeals focused on the failure to consider the secondary impacts of the Project. But that court also addressed those other NEPA issues at length, *see* 769 F.2d at 876–77, and noted that they also became significant when combined with the more serious omission to consider the secondary impacts. *Id.* at 877.

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court addressed the question of whether fees may be awarded for services on unsuccessful claims:

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his work on another claim. Accord-

ingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." (citation omitted). The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim. (footnote omitted).

... In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 434–35, 103 S.Ct. at 1940. *See also City of Riverside v. Santos Rivera,* —— U.S. ——, ——, 106 S.Ct. 2686, 2691–92, 91 L.Ed.2d 466 (U.S.1986); *Conservation Law Foundation of New England, Inc. v. Secretary of the Interior,* 790 F.2d 965, 970 (1st Cir.1986); *Garrity v. Sununu,* 752 F.2d 727, 734 (1st Cir.1984).

In the present case, the NEPA contentions on which plaintiff assertedly did not prevail involved a "common core of facts" and were "based on related legal theories" linking them to the contention on which it did prevail. Nor can plaintiff's NEPA claim realistically be separated into discrete issues. The Court will not reduce the hours for which plaintiff requests compensation for the time spent on NEPA issues on which it did not expressly prevail simply because plaintiff did not prevail on every contention it raised. *See City of Riverside v. Santos Rivera,* —— U.S. at ——, 106 S.Ct. at 2691–92; *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940; *Conservation Law Foundation of New England, Inc. v. Secretary of the Interior,* 790 F.2d at 970; *Garrity v. Sununu,* 752 F.2d at 734–35; *Action on Smoking and Health v. Civil*

*Aeronautics Board,* 724 F.2d 211, 216 (D.C.Cir.1984).

*Hourly Rates.* The EAJA provides that the amount of attorneys' fees to be awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished," except that

attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

Defendants do not dispute that the statutory cap of $75 per hour is below the prevailing market rates for environmental litigation charged by attorneys with the qualifications and experience of Messrs. Lawson, Koff and Spencer. Defendants apparently also concede that the rate allowed Messrs. Lawson and Koff in this case should not be less than the $75 per hour figure authorized by the EAJA.[4] Plaintiff submits, however, that the hourly rate for the attorneys in this case should exceed $75 per hour to take account of the increase in the cost of living since the $75 hourly cap was fixed in 1981 and to recognize the contingent nature of counsel's fee arrangement. Accordingly, plaintiff requests rates of $106.25 per hour for Messrs. Lawson and Koff and $110.43 for Mr. Spencer.[5] Defendants strenuously object to any upward adjustment of the $75 statutory figure. The Court will treat separately each of the issues thus presented.

*Cost-of-Living Increase.* Subsection (2)(A) of Section 2412(d) expressly provides that the $75 hourly rate may be adjusted for an increase in the cost of living, and the courts have approved such an increase in EAJA cases. *See, e.g., Natural Resources Defense Council v. U.S.E.P.A.,* 703 F.2d 700, 713 (3d Cir.1983); *Impro Products, Inc. v. Block,* 569 F.Supp. 1389 (D.D.C. 1983). The government contends that because the $75 cap was reenacted without change in the August 1985 extension and amendment of the EAJA, the Court properly may allow only a cost-of-living increase since that date. Accordingly, defendants say that inflation occurring between October 1, 1981, the effective date of the original EAJA, and August 1985, must be ignored.

The Court rejects the government's argument. The government's position and the single case upon which it relies, *Chipman v. Secretary of Health and Human Services,* 781 F.2d 545, 547 (6th Cir.1986), ignore a basic principle of statutory construction and would lead to an incongruous result. There is nothing in the legislative history of the 1985 amendments to indicate a congressional intent that inflation occurring between 1981 and 1985 now should be ignored. To hold otherwise would be to disregard the law as it existed and was interpreted during the first four years of the EAJA. As Professor Sutherland states:

Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation

---

**4.** Defendants urge that the hourly rate to be allowed Mr. Spencer should be less than $75. While not questioning Mr. Spencer's qualifications and experience, defendants maintain that the type of work he performed as local counsel does not justify the $75 fee permitted by the EAJA. They contend that Mr. Spencer should be compensated not more than $40 per hour because he did not engage in "core" legal work. The Court disagrees. Mr. Spencer's appearance as local counsel was required by Local Rule 3(d). Although he has candidly characterized his work as "the minimal functions required of local counsel," his affidavit discloses that he "attended conferences and hearings before the

Court, that he reviewed and signed all pleadings, and advised Mr. Koff and Mr. Lawson on matters relating to local rules and practices." The Court cannot say that a $75 hourly rate, which is substantially below the prevailing market rate, is excessive compensation for the services he performed. The Court will not, however, allow the inflation adjustment to the $75 figure it is awarding Messrs. Lawson and Koff.

**5.** Plaintiff suggests a $25 hourly rate for law clerks' time. Defendants do not contest the reasonableness of this rate, and the Court will allow it.

of the original law.... The provisions of the original act or section reenacted by the amendment are held to have been the law since they were first enacted....

... Words and provisions used in the original act or section are presumed to be used in the same sense in the amendment. Moreover, the legislature is presumed to know the prior construction of the original act, and if words or provisions in the act or section amended that had been previously construed are repeated in the amendment, it is held that the legislature adopted the prior construction of the word or provision.

IA Sutherland, *Statutory Construction*, § 22.33 (4th ed. 1985) (footnotes omitted). Moreover, the government's interpretation would lead to the absurd result that plaintiffs who received inflation-adjusted compensation before the 1985 reenactment of the EAJA will have been compensated at higher rates than plaintiffs compensated under the 1985 extension of the Act.

Exhibit F to plaintiff's fee application discloses a 17.8% increase in the consumer price index between September 1981 and September 1985. Applying this percentage increase to the $75 hourly rate specified by the EAJA produces a rate of $88.35 per hour. However, because Messrs. Lawson and Koff concede that they would have charged only $85 per hour for their services in this case, the Court will not allow the inflation adjustment to increase their rate above that figure.

*Contingent Fee Adjustment.*

Plaintiff seeks a 25% upward adjustment of the $85 inflation-adjusted hourly rate for Messrs. Lawson and Koff, to account for the contingent nature of the fee arrangement plaintiff allegedly had with its counsel. The government opposes such an enhanced award, contending that it would be inconsistent with the statute's mandate

that fee awards only be granted to *prevailing* parties.

The EAJA gives the Court discretion in fee cases to consider special factors "to insure that unusual circumstances have not rendered the lodestar formula an improper measure of compensation." *Action of Smoking and Health v. Civil Aeronautics Board*, 724 F.2d at 218. The Supreme Court has not determined, however, whether the risk of loss, without assurance of payment, ever justifies an enhanced lodestar rate pursuant to attorneys' fees statutes such as the EAJA. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, ——, 106 S.Ct. 3088, 3100, 92 L.Ed.2d 439 (U.S.1986); *Blum v. Stenson*, 465 U.S. 886, 901 n. 17, 104 S.Ct. 1541, 1550 n. 17, 79 L.Ed.2d 891 (1984).[6]

Whether or not an upward adjustment for the risk of loss is ultimately determined to permit an increase in the lodestar rate pursuant to an attorneys' fee statute, such an adjustment would not be proper in this case. Counsel took this case on the "understanding" that Sierra Club would "engage in good faith fundraising efforts to pay for its attorneys' services." *See* Mr. Lawson's letter to the Court dated May 9, 1986, with attachment. Such an understanding is not reflective of a true contingent fee arrangement that would justify an enhanced fee award here.

The Court will not adjust the $85 inflation-adjusted hourly rate for Messrs. Lawson and Koff to reflect the allegedly contingent nature of their fee arrangement with plaintiff.

\* \* \*

In accordance with the foregoing, the following award of attorneys' fees will be made to plaintiff for counsel's services in *Sierra I:*

Work on the merits:

---

**6.** *Delaware Valley Citizens' Council* has been restored to the Supreme Court's argument calendar on the question whether attorneys' fees chargeable to a losing defendant under fee-shifting statutes may be enhanced based on the risk of loss, and if so, to what extent. —— U.S. at ——, 106 S.Ct. at 3100.

| Attorney | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Edward F. Lawson | 244.8 | $85 | $20,808.00 |
| Peter L. Koff | 66 | 85 | 5,610.00 |
| Richard A. Spencer | 9.8 | 75 | 735.00 |
| Law Clerks | | | |
| Wendy Levine | 30.2 | 25 | 755.00 |
| Joyce Richard | 27.5 | 25 | 687.50 |

Work on the fee application:

| Attorney | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Edward F. Lawson | 86.0* | 85 | $7,310.00 |
| Peter L. Koff | 6.7* | 85 | 569.50 |
| Richard A. Spencer | 1.0 | 75 | 75.00 |
| Law Clerk | | | |
| Rebecca Ritchie | 19.1 | 25 | 477.50 |
| Total— | | | $37,027.50 |

## B. *Sierra II*

*Number of Hours.* The affidavits and timesheets attached to plaintiff's fee application in *Sierra II* detail the number of hours expended by the three attorneys and three law clerks who worked on the case. The application includes only hours spent on *Sierra II* and excludes time spent on *Sierra I*, which has been accounted for separately.

Plaintiff seeks compensation for the following hours expended by counsel on *Sierra II:*

Work on the merits:

| Attorney | Hours |
| --- | --- |
| Edward F. Lawson | 208.4 |
| Peter L. Koff | 82.9 |
| Richard A. Spencer | 5.0 |
| Law Clerks | |
| Wendy Levine | 7.3 |
| Vern Cahoon | 15.7 |

Work on the fee application:

| Attorney | Hours |
| --- | --- |
| Edward F. Lawson | 40.8 |
| Peter L. Koff | 2.1 |
| Richard A. Spencer | 0.8 |
| Law Clerks | |
| Sheila Coakley | 10.4 |
| Rebecca Ritchie | 3.8 |

Of the 208.4 hours of Mr. Lawson's time, 76 hours were spent in responding to the appeal taken by the State of Maine and 10.2 hours on the NEPA claim in Count II of the complaint. Of his 82.9 hours, Mr. Koff spent 1.5 hours on the Maine appeal and 5.5 hours on the NEPA issues. Mr. Cahoon's 15.7 hours were all spent on the Maine appeal.

Defendants contend that plaintiff's requested award should be reduced by the number of hours spent on the NEPA claim and the time spent addressing the State of Maine's appeal. The Court has concluded that plaintiff is entitled to compensation for the time expended on the NEPA claim, but that plaintiff's requested award should

---

* The Court has disallowed 9.8 hours of the time requested by Mr. Lawson and .5 of Mr. Koff's requested hours, as the time spent in research and briefing plaintiff's request for a contingency factor increase in the EAJA hourly rate.

be reduced by the number of hours spent on the appeal by the State of Maine.

The government concedes that in *Sierra II* plaintiff prevailed on the issue of noncompliance with the General Bridge Act (Count I), but asserts that the NEPA count (Count II) was effectively resolved by the Court of Appeals in *Sierra I* and the *Sierra I* decision mooted the NEPA claim for *Sierra II.* The Court of Appeals in *Sierra II,* however, expressly found that the prior decision in *Sierra I* had no res judicata effect upon *Sierra II* because the two cases involved different actions by different federal agencies. 779 F.2d at 779–80.

This Court agrees with plaintiff that because the decision in *Sierra I* was not binding on the Coast Guard, it was not that case which legally obligated the Coast Guard to comply with NEPA. Moreover, the fact that neither this Court nor the Court of Appeals addressed the NEPA issue is not controlling. In *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980), the Supreme Court held that a plaintiff may be a prevailing party even if there has not been "a judicial determination that the plaintiff's rights have been violated." In the present case, as a result of plaintiff's separate action against the Coast Guard, that agency agreed to prepare an EIS before issuing another license. Having attained its goal of Coast Guard compliance with NEPA in *Sierra II,* plaintiff's award should not be reduced for its work on that claim merely because it succeeded short of a judicial disposition. *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939 (citing *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). The Court will not reduce plaintiff's requested award by the limited time spent on the NEPA issue in *Sierra II.*

Plaintiff claims that it is entitled to compensation for time spent responding to the appeal by the State of Maine of this Court's decision in *Sierra II,* even though the federal defendants did not join in that appeal. The contention is that the government had a duty affirmatively to abandon its position and that the mere failure to appeal did not satisfy that burden. Plaintiff cites no authority supporting this novel argument, and this Court is aware of no principle which would permit an award of EAJA compensation to a plaintiff for time expended on an appeal to which the United States is not a party. This Court already has determined that plaintiff should be compensated for the unjustified agency actions prompting the litigation in this Court. The government should not be further penalized by being forced to bear the expense of what may have been an unreasonable appeal of the Court's decision by the State of Maine. The Court will disallow the 76 hours spent by Mr. Lawson, the 1.5 hours spent by Mr. Koff, and the 15.7 hours spent by Mr. Cahoon on Maine's appeal.

Of the reamining hours for which plaintiff seeks compensation, the Court disallows as excessive 9 hours of the 14 hours Mr. Lawson and Mr. Koff each requested for time spent on oral arguments before this Court on January 15 and February 21, 1985. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952–55. With this exception, an examination of the affidavits and timesheets, and the Court's familiarity with counsel's work on the case, satisfies the Court that the hours for which plaintiff seeks compensation for counsel's work in this Court were reasonably expended by its attorneys in their successful prosecution of plaintiff's claims and in pursuit of an award of attorneys' fees and expenses that has been vigorously contested by defendants.

*Hourly Rates.* The Court will allow counsel the same hourly rates in *Sierra II* as in *Sierra I:* an $85 rate for Messrs. Lawson and Koff; a $75 rate for Mr. Spencer; and a $25 rate for the law clerks.

\*    \*    \*

Pursuant to the above, the following award of attorneys' fees will be made to plaintiff for counsel's services in *Sierra II:*

Work on the merits:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Edward F. Lawson | 123.4 | $85 | $10,489.00 |
| Peter L. Koff | 72.4 | 85 | 6,154.00 |
| Richard A. Spencer | 5.0 | 75 | 375.00 |
| **Law Clerk** | | | |
| Wendy Levine | 7.3 | 25 | 182.50 |

Work on the fee application:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Edward F. Lawson | 20.4** | 85 | $1,734.00 |
| Peter L. Koff | 0.8 | 85 | 68.00 |
| Richard A. Spencer | 0.8 | 75 | 60.00 |
| **Law Clerks** | | | |
| Sheila Coakley | 5.2** | 25 | 130.00 |
| Rebecca Ritchie | 1.9** | 25 | 47.50 |
| Total— | | | $19,240.00 |

## IV.

### *Expenses*

The EAJA authorizes an award to the prevailing party of costs "as enumerated in Section 1920" of Title 28. 28 U.S.C. § 2412(a).[7] The EAJA also provides for the award to a prevailing party of "fees and other expenses, in addition to any costs awarded pursuant to subsection (a) ..." 28 U.S.C. § 2412(d)(1)(A). The Act defines "fees and other expenses" to include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the Court to be necessary for the preparation of the party's case, and reason- able attorney fees...." 28 U.S.C. § 2412(d)(2)(A).

Plaintiff in this case seeks an award of the following expenses:

*Sierra I*

| | |
|---|---|
| Photocopying | $ 924.53 |
| Postage | 269.27 |
| Filing fees | 130.00 |
| Telephone | 524.34 |
| Messenger | 8.20 |
| Travel | 5.45 |
| Total— | $1,861.79 |

*Sierra II*

| | |
|---|---|
| Photocopying | $ 285.31 |
| Postage | 173.53 |
| Filing fees | 60.00 |
| Telephone | 47.43 |
| Total— | $ 566.27 |

** The Court has disallowed one-half of the hours requested by Mr. Lawson, Ms. Ritchie and Ms. Coakley, as approximating time spent in re- search and briefing plaintiff's request for fees and expenses on Maine's appeal.

7. Section 1920 of Title 28 permits the Court to tax as costs:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed ex- perts, compensation of interpreters, and sala- ries, fees, expenses, and costs of special inter- pretation services under section 1828 of this title.
28 U.S.C. § 1920.

Of the expenses requested by plaintiff, the photocopying and filing fees are taxable costs under 28 U.S.C. § 1920, and properly may be awarded. The EAJA does not, however, authorize the Court to award the other expenses requested by plaintiffs. *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 224 (D.C.Cir.1982); *NAACP v. Donovan*, 554 F.Supp. 715, 719 (D.D.C. 1982). *See also* 2A Sutherland, *Statutory Construction*, § 47.23 (4th ed. 1985) (in statutory interpretation, when items are specifically designated "there is an inference that all omissions should be understood as exclusions." (footnotes omitted)

The Court will award to plaintiff the following costs reasonably incurred in these cases:

*Sierra I*

| | |
|---|---|
| Photocopying | $ 924.53 |
| Filing fees | 130.00 |
| Total— | $1,054.53 |

*Sierra II*

| | |
|---|---|
| Photocopying | $ 285.31 |
| Filing fees | 60.00 |
| Total— | $ 345.31 |

## V.

### Order

The Court makes the following award of attorneys' fees and costs to plaintiff in these cases:

*Sierra I*

| | |
|---|---|
| Attorneys' Fees | $37,027.50 |
| Costs | 1,054.53 |
| Total— | $38,082.03 |

*Sierra II*

| | |
|---|---|
| Attorneys' Fees | $19,240.00 |
| Costs | 345.31 |
| Total— | $19,585.31 |

IT IS SO ORDERED.